UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALPHONSE J. FRANK, *on behalf of himself*
*and all other employees similarly situated*,

            DECISION & ORDER_____

_____      Plaintiff,

            04-CV-6053T

      v.

EASTMAN KODAK COMPANY,

          Defendant.

_____

## PRELIMINARY STATEMENT

By order dated March 19, 2004, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 3). The parties have further consented to the jurisdiction of this Court for the sole purpose of determining whether to approve a settlement agreement reached by the parties, pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Docket # 19). For the reasons that follow, the proposed settlement is approved.

## BACKGROUND

This case arises from an alleged failure to pay appropriate overtime wages. The named plaintiff, Alphonse J. Frank ("Frank"), initially filed suit on behalf of himself and all other similarly-situated individuals against defendant Eastman Kodak Company ("Kodak"). (Docket # 1).

Frank was referred to Kodak by Shenouda Associates, Inc. ("Shenouda"), a third-party vendor, and was most recently employed in Kodak's Technical Knowledge Management Organization.  According to Frank, Kodak was the joint employer of those individuals referred by Shenouda whom it had the power to hire, fire, discipline and supervise, and the ability to control their day-to-day activities and to determine their level of compensation.  Frank alleges that he and other employees referred to Kodak by Shenouda frequently worked in excess of forty hours in a week without compensation for those excess hours.  Such a failure, Frank contends, has occurred consistently over at least the past six years and constitutes a violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("N.Y. Labor Law").  (Docket # 1).

Following the filing of the Complaint, the parties engaged in extensive discovery to identify the potential class members and to calculate the number of overtime hours worked and the relevant rates of pay.  (Docket # 35).  Following such discovery, the parties entered into settlement negotiations, which culminated in the settlement agreement dated February 8, 2005, currently pending before this Court for final approval (the "Settlement Agreement" or "Class Settlement").  (Docket # 41).  On February 18, 2005, this Court issued an Order preliminarily approving the Class Settlement and certifying the class for settlement, and ordering that notice be mailed to all potential class members (the "Notice").  (Docket # 29).  The Notice described the pending suit and proposed Class Settlement and explained that class members either could participate in the settlement, object to final approval of the settlement, or request exclusion from the settlement by "opting out" of the class.  (Docket # 29).

As described in the Notice, the class is defined as "individuals who were provided or referred to [Kodak] by Shenouda at any time from January 1, 1998 through December 31, 2004, but excluding those individuals who were in fact independent contractors at law." (Docket # 28). Under the Settlement Agreement, if the settlement is approved, Kodak will pay each class member a sum out of a common fund of $75,000 representing his or her percentage of overtime worked in relation to the other class members. Based upon their investigation of the relevant time records, counsel have determined that the $75,000 fund will provide more than enough compensation to pay each class member for every overtime hour worked, if any, at the time and one-half rate that they should have received had they been paid properly at the time. In other words, each class member who worked over forty hours in any given work week during the relevant time period will receive more overtime compensation pursuant to the Settlement Agreement than he or she would have been entitled to had overtime been paid during the regular pay period. The additional compensation reflects a negotiated compromise of the liquidated damages originally sought under the FLSA and the interest and penalty damages originally sought under the N.Y. Labor Law. In exchange for the guaranteed recovery promised through the Settlement Agreement, all plaintiffs who do not opt out of the Class Settlement agree to release all claims against Kodak and Shenouda arising out of the alleged non-payment of overtime compensation.

The Settlement Agreement further provides for an incentive payment in the amount of $10,000 to the lead plaintiff and class representative, Alphonse Frank. Such payment is in addition to the amount Frank will receive for unpaid overtime compensation and is intended to compensate him for the time, effort and financial risk undertaken in this litigation. Finally, the

Settlement Agreement also provides for an additional payment of $50,000 to be paid by Kodak to class counsel, Dolin, Thomas & Solomon LLP.  This payment is separate from the $75,000 fund from which plaintiffs are to be paid.  Thus, the total settlement fund is $125,000.

The Notice also advised all potential class members that if they wished to opt out of the class or to file objections to the Settlement Agreement, they were to do so by March 22, 2005.  No objections were received by this Court, and six of the potential class members elected to opt out.  Finally, class members were advised that a hearing would be conducted by this Court on March 29, 2005, to determine whether to approve the Class Settlement, and they were invited to attend the hearing to express their views relating to adequacy of the settlement.  At that hearing, the Court entertained argument by counsel for the parties in support of the Class Settlement.  Other than Frank, no class members attended the hearing, and no objections were voiced.

## **DISCUSSION**

The parties jointly argue that class certification in this matter is appropriate pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and that the proposed settlement is fair, reasonable and adequate.  This Court is also presented with an application for attorneys' fees to be paid to plaintiffs' counsel pursuant to Rule 23(h) and for an incentive payment to be paid to Frank, the class representative.

## I.  **Class Certification**

Certification of a class action is governed by Rule 23 of the Federal Rules of Civil

Procedure.  To qualify for class certification, a putative class must satisfy the four requirements

of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b).  Under

Rule 23(a), certification of a class action is appropriate if:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests
> of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) provides that an action may be maintained as a class action if the

prerequisites of subdivision (a) are satisfied and, in addition:

> the court finds that the questions of law or fact common to the
> members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the
> controversy.  The matters pertinent to the findings include: (A) the
> interest of members of the class in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already
> commenced by or against members of the class; (C) the desirability
> or undesirability of concentrating the litigation of the claims in the
> particular forum; (D) the difficulties likely to be encountered in the
> management of a class action.

Fed. R. Civ. P. 23(b)(3).

This Court first will consider whether class certification is appropriate in light of

the four requirements set forth in Rule 23(a).

A. **Numerosity:**  The numerosity requirement under Federal Rule 23(a) is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Rather, it refers to the burden that would be imposed by joinder.  *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) ("Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder") (quotation omitted).

While a potential class of forty members is generally presumed sufficiently numerous, *see Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d at 483, a court evaluating the appropriateness of class certification must consider more than mere numbers alone.  *See Robidoux v. Celani*, 987 F.2d at 936.  Rather, a determination of practicability should be based upon all the circumstances surrounding the case.  *Id.*  The court should consider such relevant factors as: "judicial economy arising from the avoidance of a multiplicity of actions, . . . financial resources of class members, [and] the ability of claimants to institute individual suits."  *Id.* (citing 1 Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.06, at 143 (2d ed. 1985)).  *See also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) (class of eighteen individuals found sufficiently numerous); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certification of class may be proper even with class as small as fourteen members); *Meyer v. Stevenson, Bishop, McCredie, Inc.*, 1976 WL 788, *2 (S.D.N.Y. 1976) (certifying class of thirty individuals); *Philadelphia*

*Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452 (E.D. Pa. 1968) (class of twenty-five

individuals satisfied numerosity requirement).

In this matter, the parties jointly seek class certification for a class of twenty-eight

individuals who were allegedly referred to Kodak by Shenouda and were suffered or permitted to

perform services for Kodak in excess of forty hours in one week.  While joinder of these

individuals is certainly not impossible, it is nonetheless improbable under the circumstances of

this case.  Of the twenty-eight individuals eligible to participate in this action, approximately

one-third of them, while they worked some overtime, did so at levels entitling them to receive

compensation under the Agreement in amounts below one thousand dollars each.  (Docket # 41,

Sch. A).  The small recoveries expected to be received by these individuals renders it less likely

that, without the benefit of class representation, they would be willing to incur the financial costs

and hardships of separate litigations, which would certainly exceed their recoveries manyfold.[1]

*See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically

feasible to obtain relief within the traditional framework of a multiplicity of small individual

suits for damages, aggrieved persons may be without any effective redress unless they may

employ the class-action device"); *Robidoux v. Celani*, 987 F.2d at 936 (court should consider the

financial resources of class members, as well as their ability to institute individual suits).  In

addition, the more efficient use of judicial resources counsels in favor of class certification in this

matter.  *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968)

("While 25 is a small number . . . , it is a large number when compared to a single unit.  I see no

---

[1] Even were the plaintiffs to receive damage awards encompassing all the liquidated damages, interest and penalties available under the relevant statutes, such awards still would likely be less than the costs of each litigation were individual cases to proceed to trial.

necessity for encumbering the judicial process with 25 lawsuits, if one will do."). Accordingly, I find that the numerosity requirement has been satisfied.

**B.  Commonality:**  Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The purpose of this requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). The claims by each individual need not be identical, however, but there must exist common questions of fact or law. *Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F.2d 150, 153-54 (2d Cir. 1983). Courts have generally construed the commonality requirement liberally and require that only one issue be common to all class members. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992).

In the case at bar, all plaintiffs have raised the identical claim that they were denied overtime compensation by Kodak for hours worked over forty in certain work weeks. In determining liability, the question of whether Kodak is a joint employer under the relevant statutes appears to be an issue common to all plaintiffs and central to a resolution of the claims. I therefore find that the commonality requirement has been satisfied.

**C.  Typicality:**  The typicality requirement of Rule 23 requires that the claims of the representative party be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. at 200. *See also Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999) (analysis of

commonality and typicality tend to merge "because 'both serve as guideposts for determining whether ... the named plaintiff's claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence'") (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. at 157 n.13), *cert. denied*, 529 U.S. 1107 (2000).  The representative party has demonstrated typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

Here, Frank's claims arise from the same course of events as those raised by all other class members – that is, all class members, including Frank, allege that Kodak failed to pay them, as employees who were referred to Kodak by Shenouda, overtime wages for hours worked in excess of forty per week during the relevant time period.  Thus, the legal arguments raised by Frank will be common to all plaintiffs.  For these reasons, I find that the typicality requirement has been satisfied.

**D.  Adequacy of Representation:**  The final requirement of Rule 23(a) relates to the adequacy of representation.  Under the rule, the court must find that "the representative parties will fairly and adequately protect the interests of the class."  Fed R. Civ. P. 23(a)(4).  To make such an evaluation, the court first must consider whether class counsel is "qualified, experienced and generally able to conduct the litigation."  *In re Drexel Burnham Lambert*, 960 F.2d at 291 (internal quotation omitted).  Second, "the class members must not have interests that are 'antagonistic' to one another." *Id.*

Class counsel in this case has demonstrated that it is well-qualified to conduct the litigation.  The attorneys at Dolin, Thomas & Solomon LLP are experienced employment

litigators who have participated in multiple class actions, several of which have involved or currently involve claims for unpaid overtime compensation.  (Docket # 32, Zappia Aff. at ¶ 3). Counsel has further indicated that it is unaware of any conflicts of interest or other pending actions alleging similar causes of action.  (Zappia Aff. at ¶ 3).  Nor is this Court aware of any potential conflicts between or among any class members.  Indeed, class representative Frank's claim that Kodak failed to pay overtime compensation at the mandatory rate of time and one-half is the same claim raised by all class members.[2]  I therefore find that the adequacy of representation requirement has been satisfied.

E.  **Common Questions of Law and Fact:**  Having found that all requirements of Rule 23(a) have been satisfied, this Court must now address the requirements of Rule 23(b).  As stated above, class certification is appropriate if common questions of law or fact predominate over any questions affecting only individual members.  In addition, a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.

---

[2]  Counsel for Kodak has indicated that were this case to proceed to trial, Kodak might press the issue of whether certain of the job duties performed by some of the class members are exempt under applicable statutes and regulations.  That certain class members might be required to defend against the applicability of specified exemptions does not, of course, render their claims antagonistic to the claims of any other members.  *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. at 199-200 ("The Court is well aware that here, as in any class action, certain defenses of proof may ultimately be required of some class members but not others.  To prohibit certification of a class on the basis of such speculation, however, would wholly negate the utility of the class action device and undermine the very policy that Rule 23 is intended to promote.  The Court finds a predominance of common questions of law and fact sufficient to satisfy Rule 23(b)(3)").

2002) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132 (2d Cir. 2001),

*cert. denied*, 536 U.S. 917 (2002)).  The predominance requirement under Rule 23(b) is more

demanding than the Rule 23(a) commonality inquiry and is designed to determine whether

"proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Moore v. PaineWebber, Inc.*, 306

F.3d at 1252.

Here, I find that common questions of law and fact predominate over any

questions affecting individual class members.  All members of the class assert that they were

referred to Kodak by Shenouda during the relevant time period and that they were not paid

overtime wages for hours worked in excess of forty hours per week in violation of the FLSA and

New York Labor Law.  There are no other legal claims by any individuals based upon disparate

allegations.  While the question of the applicability of certain legal exemptions may arise as to

certain plaintiffs, depending upon their job duties, those issues are not likely to predominate over

the common issues.  Of course, the question of how many hours of overtime each plaintiff

worked is particular to each plaintiff; nonetheless, the methodology utilized presumably will be

similar or identical: ascertain the appropriate time recording procedures utilized, review the

applicable time records and determine the applicable rate of pay from the hourly wage paid each

employee. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139 (common issues

may predominate "even when there are some individualized damage issues"); *Noble v. 93 Univ.*

*Place Corp.*, 224 F.R.D. at 343 (finding commonality despite differences among plaintiff

employees relating to amount of unpaid overtime due); *Bolanos v. Norwegian Cruise Lines Ltd.*,

212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (certification of class action under Rule 23(b)(3)

recommended for case involving unpaid overtime despite necessity of individualized damage

calculations); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (in

class action for minimum wage and overtime violations, individual differences relating to

damages did not defeat commonality).

      With respect to the superiority prong, Rule 23(b)(3) requires that the class action

be superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  The rule further sets forth

a non-exclusive list of factors pertinent to the superiority determination:

> (a) the interest of members of the class in individually controlling
> the prosecution . . . of separate actions;
> (b) the extent and nature of any litigation concerning the
> controversy already commenced by . . . members of the class;
> (c) the desirability . . . of concentrating the litigation . . . in the
> particular forum;
> (d) the difficulties likely to be encountered in the management of
> the class action.

Fed. R. Civ. P. 23(b)(3).  The court need not consider the fourth factor, however, when the class

is being certified solely for the purpose of settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

at 620.  That factor relates to manageability issues that might arise at trial and is thus not a

concern where the court is considering only settlement.  *Id.*

      Considering the above factors, I find that class representation is both a superior

method of adjudication and indeed may be vital to a successful resolution of this matter.  As

discussed above, many of the class members worked relatively few overtime hours and thus are

expecting a recovery of less than one thousand dollars each.  It is unlikely that these such

plaintiffs would be willing to file individual lawsuits and incur the expenses of litigation for such

a small award.  Therefore, without the economic benefit of class representation, many of the

plaintiffs would be forced to forego compensation to which they are entitled.  *See Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights") (internal quotations omitted); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. at 339.  In addition, counsel have represented that they are unaware of any other action brought by any of the class members arising from the overtime dispute; thus, this forum seems as desirable as any in which to concentrate the litigation.  It is therefore the finding of this Court that a class action is the superior method of adjudication in this case.

On the evidence before me, I find that the requirements of Federal Rules 23(a) and (b) have been satisfied.  Therefore, pursuant to the consent of both parties, this Court grants certification of the class for the sole purpose of settlement.

## II.  Approval of Settlement Agreement

This Court must now address the terms of the proposed settlement agreement.  To approve a class action settlement, the court must find that the settlement agreement is "fair, adequate, and reasonable, and not a product of collusion."  *Joel A. v. Guiliani*, 218 F.3d 132, 138-39 (2d Cir. 2000).  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"  *Id.* (quoting *Manual for Complex Litigation, Third,* § 30.42 (1995)).

13

Indeed, the settlement of class action cases is strongly encouraged by the courts. *Id.* at 116-17. (citations omitted).

     As discussed more fully below, the plaintiff class in this matter was represented by one of the leading specialty law firms in the community, concentrating in employment matters and having prior experience in class action litigation. Similarly, Kodak's counsel is equally well-qualified. At the preliminary approval hearing and the final fairness hearing, counsel described in detail the lengthy and thorough negotiating process engaged in by the parties. My knowledge of counsels' experience and reputations, as well as my familiarity with the progress of this litigation through pretrial conferences, leads me to conclude easily that the Settlement Agreement represents the product of extensive arm's-length, non-collusive negotiations between able and experienced counsel.

     **A. The *Grinnell* Factors:** In evaluating the adequacy of a settlement agreement, courts in this Circuit generally consider the factors enunciated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The so-called *Grinnell* factors are as follows:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery;
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 463.

In the case at bar, the *Grinnell* factors weigh overwhelmingly in favor of class settlement. First, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001). Although this case is less complex than many, the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved. Counsel will be required to take numerous depositions and conduct significant documentary review relating to the employment relationship between the class members, Kodak and Shenouda, as well as the particular job duties performed and hours of overtime worked by the plaintiffs. Counsel estimates that a trial would require a minimum of two or three weeks – an estimate that appears reasonable to this Court. (Zappia Aff. at ¶¶ 27-36).

Second, the Court must consider the reaction of the class to the settlement, which has been generally positive. Of the twenty-eight potential class members, none has filed an objection. Thus, the opposition percentage to the terms of the settlement is essentially zero. However, six potential plaintiffs have opted out and have done so following notice to them of the terms of the settlement. The record is not entirely clear as to their reasons for opting out. Of the few who have explained their reasons to class counsel, none apparently has criticized the fairness of the Settlement. Rather, they have expressed concern that their future employment opportunities could be limited if they were to participate in a lawsuit against a large local employer. Even if this Court were to assume that all six of the potential plaintiffs who elected to opt out did so because they believed the terms of the settlement to be unfair, the objection percentage would still amount to only 21%, a rate similar to those found acceptable in other

cases.  *See*, *e.g.*, *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (approving class

settlement where 45 of the 126 class members (approximately 36%) expressed opposition to the

settlement); *Bryan v. Pittsburgh Plate Glass Co. (PPG Industries, Inc.)*, 494 F.2d 799, 803 (3d

Cir.) (approving settlement despite objection rate of over 20%), *cert. denied*, 419 U.S. 900

(1974); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *23 (S.D.N.Y. 2002)

(approximately 18% objected); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979)

(approximately 16% filed opposition).

   The third *Grinnell* factor looks to the stage of the proceedings and the amount of

discovery completed.  While the parties need not have engaged in extensive discovery, *Plummer*

*v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982), a sufficient factual investigation must have

been conducted to afford the Court the opportunity to "'intelligently [] make ... an appraisal' of

the Settlement."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176

(quoting *Plummer v. Chemical Bank*, 668 F.2d at 660).  In addition, "[t]he pretrial negotiations

and discovery must be sufficiently adversarial that they are not designed to justify a settlement ...

[,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (quoting

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

   Here, the parties engaged in extensive discovery to ascertain the identities of

potential class members, the hours for which they performed services for Kodak after referral

from Shenouda, and the relevant rates of pay for hours worked.  (Docket # 33, Jones Aff.).

Shenouda initially provided to plaintiffs' counsel several hundred pages of records.  Moreover,

counsel for Kodak conducted its own investigation and thereafter produced time records for

additional individuals not included within the initial disclosures by Shenouda.  Thus, while this

16

case is still in the relatively early stages of discovery, the information exchanged and analyzed has been sufficient to determine the unpaid overtime compensation due to each plaintiff.  Further, while the relationship between plaintiffs' counsel and counsel for Kodak has been cooperative, it has been in no way collusive.

The fourth and fifth factors under *Grinnell* require the Court to consider the risks of establishing liability and damages.  The Court is not required to "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981), or to "foresee with absolute certainty the outcome of the case."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177.  Rather, the Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'"  *Id.* (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 164 (S.D.N.Y. 1999)).

While plaintiffs in this matter appear to have amassed compelling evidence relating to the number of hours worked and Kodak's failure to pay appropriate overtime compensation for those hours worked over forty in one week, their success at trial is still not certain based upon a number of factors.  Significant among them is Kodak's claim that it did not act as plaintiffs' joint employer.  Moreover, Kodak may be able to establish that some of the plaintiffs fall within the computer professional exemption to the FLSA's minimum wage and maximum hours requirement.  *See* 29 U.S.C. § 213(a)(17).  Alternatively, settlement at this stage of the proceedings allows each plaintiff, without attempting to prove liability through trial, to recover an amount greater than that he or she would have received had the appropriate overtime rate been paid at the time the overtime was worked.

The sixth *Grinnell* factor considers the risk of maintaining class status through trial.  Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of a settlement.  If settlement were disapproved, it is likely that Kodak would challenge the class certification.  While plaintiffs might indeed prevail, the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement.

The seventh factor to be weighed is the ability of Kodak to withstand a greater judgment.  Neither Kodak, nor plaintiffs have argued that Kodak could not bear a judgment greater than the relatively small amount involved here.  This Court is confident that a corporation the size of Kodak could survive a greater judgment.  Thus, this factor weighs against the settlement.  The amount of the settlement, however, when considered with the other *Grinnell* factors, does not alone render the settlement unfair.  *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 ("defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)).

The final two factors – the range of reasonableness of the settlement fund in light of the best possible recovery (eighth factor) and in light of the attendant risks of litigation (ninth factor) – weigh in favor of the settlement.  The determination whether a settlement is reasonable does not involve the use of a "mathematical equation yielding a particularized sum."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (quoting *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)).  Instead, "there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039 (1972).

The Settlement Agreement in this matter represents a compromise between the strengths of plaintiffs' case and the possible success of Kodak's defenses. For example, while the Settlement Agreement forecloses the award of anything but a minimal amount of liquidated damages,[3] it guarantees that each plaintiff who worked over forty hours in any one work week will receive compensation greater than he or she would have received had the overtime been paid at the appropriate rate when it was incurred. (Jones Aff. at ¶ 7). Such a compromise, I find, reasonably balances the damages potentially recoverable by the plaintiffs with the genuine risks of continued litigation.

On this record, I find that the *Grinnell* factors weigh in favor of the proposed settlement and that the Agreement represents a reasonable compromise resulting from the conscientious and skilled negotiations of counsel for both parties.

**B. Incentive Payment to the Class Representative:**  In addition to the general recovery to be paid to each class member, the Settlement Agreement also provides for an incentive payment to be paid to the sole class representative, Alphonse Frank, in the amount of $10,523.37. This payment represents 8.4% of the total settlement fund and is in addition to the amount Frank will otherwise receive as his appropriate share of the ultimate recovery. The stated

---

[3] As previously disclosed, each plaintiff is scheduled to receive an amount greater than the amount he or she would have been paid had overtime been paid at the time; while the settlement amounts are greater than they would have been at the time, they are apparently only minimally so.

purpose of such fee is to compensate Frank for the work he has done, as well as the risks he has

borne in filing a suit against his former employer.

      Incentive awards are not uncommon in class action cases and are within the

discretion of the court.  In calculating incentive fees, courts consider:

> the existence of special circumstances including the personal risk
> (if any) incurred by the plaintiff-applicant in becoming and
> continuing as a litigant, the time and effort expended by that
> plaintiff in assisting in the prosecution of the litigation or in
> bringing to bear added value (e.g., factual expertise), any other
> burdens sustained by that plaintiff in lending himself or herself to
> the prosecution of the claim, and of course, the ultimate recovery.

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (citing *Yap v. Sumitomo Corp. of

America*, 1991 WL 29112 (S.D.N.Y. 1991); *Green v. Battery Park City Auth.*, 1987 WL 11698

(S.D.N.Y. 1987); *Block v. Revlon*, 37 Fair Empl. Cas. (BNA) 1327 (S.D.N.Y. 1985); *Wire Serv.

Guild v. Associated Press*, No. 78-4502, No. 79-0991, slip op. (S.D.N.Y. 1983)).  The relevant

inquiry is whether the particular case presents special circumstances justifying an incentive

award.  *Women's Comm. for Equal Employment Opportunity v. National Broad. Co.*, 76 F.R.D.

173, 181-82 (S.D.N.Y. 1977).

      While the majority of reported decisions granting incentive awards arise out of

securities litigation, *see id.* (collecting cases), such awards are particularly appropriate in the

employment context.  In employment litigation, the plaintiff is often a former or current

employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit

of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.

*See Roberts v. Texaco, Inc.*, 979 F. Supp. at 201 (citations omitted); *see also Women's Comm. for

Equal Employment Opportunity v. National Broad. Co.*, 76 F.R.D. at 182 ("plaintiffs here . . .

undertook significant obligations, perhaps at some risk to job security and good will with co-workers, resulting in broad-ranging benefits to the class").  Although there is no specific measure for determining when an incentive award is justified, courts consistently focus on the existence of "special circumstances."  *Roberts v. Texaco, Inc.*, 979 F. Supp. at 201.

I find that special circumstances are present here justifying an incentive award to Frank.  Frank has been actively involved in the litigation of this case since its inception and has provided counsel with assistance, which eventually led to a favorable settlement for the entire class.  (Docket # 34, "Frank Aff." at ¶¶ 7-8).  Specifically, as a result of a tolling agreement entered into by the parties which restricted plaintiffs' counsel's right to communicate with potential class members, Frank has served as plaintiff counsel's primary source of information concerning the claims asserted against Kodak.  (Frank Aff. at ¶¶ 11-12).  Frank was often called upon to review documents and to respond to his counsel's questions.  More importantly, however, Frank has undertaken the responsibility of being the lead and only named plaintiff in a case against one of the community's largest employers; he submitted an affidavit attesting to his fears that his role in this case could deleteriously affect his future employment opportunities. (Frank Aff. ¶¶ 4-5).  Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.  Indeed, those plaintiffs who have opted out of this class and have explained their reasons for that decision expressed concern that the guaranteed recovery was not worth potential discrimination by local employers.  On this record, I find that the proposed incentive award for class representative Frank is justified by the special circumstances of this case.

C.  **Attorneys' Fees**:  The Settlement Agreement also provides for an award of attorneys' fees in the amount of $47,821.96, which represents 38.26% of the $125,000 total settlement fund.  *See Boeing Co. v. Van Germert*, 444 U.S. 472, 480-81 (1980) (appropriateness of attorneys' fees should be measured against total value of settlement fund created).  Counsel also seeks to be reimbursed for expenses totaling $2,178.04.  Thus, the total amount requested by plaintiffs' counsel is $50,000 out of the $125,000 settlement fund.

Awards of attorneys' fees in class settlements are generally calculated through the use of one of two methods; the "Lodestar" method, or the "Percentage of the Award" method. Under the lodestar method, the court must multiply the number of hours reasonably billed by the reasonable hourly rate.  *See Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Once that amount (the "lodestar" amount) is calculated, the court may then exercise its discretion to adjust the figure (and apply a multiplier to the lodestar) after considering such factors as the quality of counsel's work, the probability of success of the litigation and the complexity of the issues.  *See In re Agent Orange Product Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).  Under the percentage method, the court awards counsel a percentage of the total award received by the plaintiffs.  To calculate the percentage, the court considers the effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class.  *See Silverberg v. People's Bank*, 2000 WL 502621, *3 (D. Conn. 2000); *see also In re Independent Energy Holdings PLC,* 2003 WL 22244676, *6 (S.D.N.Y. 2003) ("percentage used in calculating any given fee award must follow a sliding scale and must bear an inverse relationship to the amount of the settlement").

The trend in the Second Circuit "is toward the percentage method, . . . which 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 at *25). Regardless of which method is utilized, the reasonableness of the attorneys' fees is ultimately determined by evaluating the six factors articulated by the Second Circuit in *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 50 (2d Cir. 2000). Those factors include:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of litigation . . . ;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

*Id.* (internal quotations omitted).

Applying the above factors to the case at hand, the entire amount requested by plaintiffs' counsel is accounted for through the time and labor already expended. Pursuant to this Court's request, counsel has submitted for *in-camera* review copies of its time records relating to this matter. These records reveal few apparent redundancies and little duplication of effort. The vast majority of time was spent investigating the facts and thereafter negotiating a settlement with opposing counsel, with the largest percentage of work being performed by the most junior, and thus least expensive, associate. To date, counsel has expended over 280 hours, which at their normal billing rate, amounts to $60,959. In light of such evidence, this Court is hard-pressed to find the requested fee award of $50,000 unreasonable.

Moreover, in calculating the value of work performed, this Court has considered the regular hourly rates that plaintiffs' counsel affirms it charges to all of its clients. (Zappia Aff.

23

¶ 15).  Specifically, the hourly rate charged for a paralegal is $95 per hour; the rate charged for a

lower level associate is $190 per hour; the rate charged for a higher level associate is $215 per

hour; and, the hourly rate charged for a partner is $260 per hour.  (Zappia Aff. ¶ 14).  In light of

the expertise required for an FLSA class action litigation, I find that these rates reasonably

conform to the prevailing rates charged in this community.  *See e.g., Sabatini v. Corning-Painted

Post Area School Dist.*, 190 F. Supp. 2d 509, 515-16 (W.D.N.Y. 2001) (finding reasonable

hourly rates for Rochester, N.Y. ranging from $120 to $235); *Wylucki v. Barberio*, 2001 WL

34013676, *6-7) (W.D.N.Y. 2001) (hourly rate of $250 found reasonable for Buffalo, N.Y.);

*McPhatter v. Cribb*, 2000 WL 743972, *3 (W.D.N.Y. 2000) (hourly rates ranging between $125

and $240 found reasonable for Buffalo, N.Y.); *Alnutt v. Cleary*, 27 F. Supp. 2d 395, 399-400

(W.D.N.Y. 1998) (hourly rates for associates between $120 and $180 reasonable for Rochester,

N.Y.).

      The magnitude and complexity of the case further counsels in favor of the

requested attorneys' fee award.  Although this case is not as complex as many of the large-scale

national class actions, the issues raised by plaintiffs' claims involve mixed questions of fact and

law.  *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) (number of hours

worked is question of fact, but whether specific work performed is protected under the labor laws

is question of law).  Moreover, without settlement, plaintiffs' counsel will be required to engage

in extensive discovery, resulting in litigation expenses that are likely to outweigh any potential

recovery.

      Moreover, the risks of litigation in this matter were significant at the time counsel

agreed to represent the plaintiff class.  Plaintiffs' success remains uncertain if settlement is not

approved.  As discussed above, if this case were to proceed to trial, Kodak likely would assert that it did not act as the plaintiffs' employer and that the computer professional exemption applies to bar claims by some of the plaintiffs.  Accordingly, these risks undercut the certainty of ultimate recovery and weigh in favor of the requested fee award.

In addition, as previously discussed, counsel is well-qualified to conduct this litigation.  Counsel is experienced in class action lawsuits, having participated in similar actions in the past.  Further, counsel has extensive experience in employment litigation, and particular expertise with the FLSA.  The fee requested by counsel here is certainly reasonable when viewed in relation to the work already performed.  Although the fees appear at first blush to constitute a large percentage of the overall settlement fund (approximately 40%), the amount is justified by the time and effort exerted.  Over 280 hours have been devoted to this case by plaintiffs' counsel, a total that, at counsel's standard billing rate, would amount to over $60,000.

If this case involved a substantially larger settlement fund, the Court would be reluctant to award attorneys' fees at the 40% level.  However, due to the relatively small settlement involved here, the requested fee award is necessary to compensate counsel adequately. *See In re Independent Energy Holdings PLC,* 2003 WL 22244676 at *6 (percentage of attorneys' fee award is inversely related to the amount of the settlement).  Similarly, public policy favors such an award.  As already noted, were it not for this class action, many of the plaintiffs' claims likely would not be heard.  In addition, if this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorneys – these or others – would likely be willing to take on future small-scale class actions such as this.

For these reasons, I find that the requested attorneys' fees are reasonable.  The law firm of Dolin, Thomas & Solomon LLP shall be awarded attorneys' fees in the requested amount of $50,000.

## **CONCLUSION**

For the foregoing reasons, I hereby approve the proposed Class Settlement as fair, reasonable and adequate, and certify the proposed class for the purpose of settlement.  Thus, the joint motion of Kodak and Frank for certification of the settlement class and approval of the class action settlement **(Docket # 31)** is **GRANTED**.  In addition, the requests for approval of the incentive payment to Frank, and for attorneys' fees and expenses **(Docket # 31)** are **GRANTED**. **IT IS SO ORDERED.**

s/Marian W. Payson

_____

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       April __29__, 2005.

26